May it please the Court, Ariel Basis for the petitioner, Maria Magdalena ZUNIGA-NEGRETE. I'd like to reserve two minutes for rebuttal, please. The main issue in this case is the ineffective assistance of counsel that petitioner received in the immigration court. Did you say ten minutes for rebuttal? What? Two minutes for rebuttal. I'm sorry, I misunderstood. I know I only have ten minutes. Okay. It's the ineffective assistance of counsel she received in immigration court. She was applying for cancellation of removal. And extraordinary and extremely unusual hardship to U.S. citizen relatives is one of the factors she needed to establish. Her daughter — She has three children, right? She has three children. They're all born here. Correct. So she had to show that one of those, at least one of those relatives, immediate relatives, had — would suffer some extraordinary and extremely unusual hardship if she were removed from the United States. Yeah. Okay. So her United States citizen daughter, her oldest child, suffered from severe headaches. It was a medical illness. And that was not presented to the immigration court by her attorney. That is the basis of her claim. Now, this claim was raised at the Board of Immigration Appeals, specifically the issue of how the headaches, they were very severe, they caused her to vomit, were not mentioned at the immigration court, and how the immigration judge denied the case on extreme hardship, in part because her children were found healthy. How old is the daughter? The daughter at the time was 11, 12, and she had been suffering from them since she was 4 years old. And you said this was presented to the Board of Immigration Appeals. Are you talking about your motion to reopen? I'm talking about the appeal that went to the Board of Immigration Appeals. And what — how did that focus on the — It talked about the ineffective assistance of counsel as one of the issues that it brought up at the Board of Immigration Appeals. It talked about how the fact that this issue wasn't brought up prejudiced the client because — And that's — and their response to that was that you hadn't met the — They denied — they affirmed the immigration judge's opinion. They adopted it. They affirmed it with that opinion. I see. Okay. Okay. So then — Was there any reference to the Lozada requirements? Not in the Board of Immigration Appeals, the first one. So then the case went to the Ninth Circuit, and the ineffective assistance of counsel was raised again. But because the Lozada requirements had not been met, I did a motion to reopen at the Board of Immigration Appeals. And the petitioner at that point did an affidavit describing specifically what happened with the attorney in immigration court, informed — sent that affidavit to the bar, and informed the attorney that this had been done. You didn't appeal the denial of that one, did you? You didn't file a petition for review within 30 days of the — Of the motion to reopen. Yes. And that's — that, I believe, is the main issue. That's — that, I believe, is why we're here right now. Now, what I'd like to — the issue is that the motion to reopen that I did, which basically perfected the ineffective assistance of counsel claim by complying with the Lozada requirements, did not bring any new issues before this Court. The ineffective assistance of counsel was already before the Court on the underlying case. All it did was perfect the Lozada requirements. And — and according to this Court, the Lozada requirements don't need to rigidly be enforced where their purpose is fully served by other means. And I'm referring to the case Castillo-Perez, which I've cited, and it's 212F3-518. It's a case in 2000. It says substantial compliance with the Lozada requirements is necessary. And my argument is that the Petitioner did substantially comply with the Lozada requirements. She wrote the affidavit, she informed the bar, and she informed the prior attorney that she had informed the bar, and gave the prior attorney a chance to respond. And therefore, the Lozada requirements have been met, and the ineffective assistance of counsel should still be served. And that's the record that this Court can consider? Since you didn't appeal, you didn't file a petition for review of the denial of the motion for reconsideration? What I did is I attached the motion to reopen with the exhibits that show that she did file — file a complaint with the State Bar with the affidavit, and she did inform the attorney. The next administrative record as far as the appeal of the April 30, 2002 decision of the BIA, is that right? That is not part of the underlying BIA decision. It is separate. And I attached it as exhibits to show that I had filed a motion to reopen and that she had perfected the Lozada claim. But it is not — I did not file a separate petition for review for the motion to reopen. See, I guess what — if we — if we were sympathetic to your view, what would we say that the board had done wrong? Well, the board adopted the immigration judge's opinion. So it didn't make a separate decision as to Lozada at all in its decision. Right. So the only reason I did the motion to reopen in the first place was to perfect it to — to prevent exactly what's happening now, but to — to perfect it so that — to preserve the Lozada claim. Well, what the board did wrong then was to deny your motion to reopen, wasn't it? Yes. But we haven't gotten an appeal from that. I mean, we don't have a petition for review of that. Right. Well, they — but the motion to reopen dealt with this exact same issues, except that Lozada was perfected in it. They didn't mention anything about Lozada not being perfected in their decision of the underlying appeal. They just affirmed the immigration judge's opinion. What do we — I don't know whether the board — I don't know that they referred to it at all, but what do we do with the testimony before the immigration judge of your client that the — that the children were in good health? The problem is that this was a person who had never been in front of court before — had never been in court before, and she didn't realize — when they asked her about the health, I guess she didn't realize that she was talking about the severe headaches because her daughter did suffer from them, but she didn't mention them in court. She didn't know what to expect. Well, she asked the petitioner about the health of the children, and she said, well, they're fine. They're not sick. Kind of hard to get around that, right? She said that they were not — they were healthy, but maybe she did not consider the severe headaches to be a health problem in the context. I mean, when she said that they haven't been sick, she was asked that after they asked if she had health insurance. You know, they were talking about how she pays for the children's — She said the health was very good. She did. She did not mention the headaches. You're right. And I believe that had she understood cancellation and the hardship and that these were — this issue was important to her case, she would have mentioned it. Do you have any — Well, how about the hardship to the children? How old are they now? Well, the oldest. The one with the headaches is — she must be about 15 or 16 now. At the time of the trial, she was about 12. And the two boys? The two boys are younger. I don't know offhand. I can tell you in a second. That's all right. Is the hardship decision appealable? Is it a discretionary decision that's not appealable under ARERA? Is that right? Okay. The hardship decision, if there are no constitutional issues involved, is not appealable. However, if there is the ineffective assistance of counsel and the immigration judge was not presented with something, that would have affected his decision, then that is reviewable by this Court. It's a constitutional issue. Yes. The ineffective assistance of counsel. Okay. You want to save a little time? Yes. May it please the Court. I'm Paul Fiorina for the Respondent. Judge Reed, you asked a question about whether the Court can consider any documents that were part of the motion to reopen. And they can't because it's not part of the administrative record under INA Section 242B4A. You also asked if a hardship decision can be reviewed and the Court doesn't have jurisdiction over that, nor does the Court have any jurisdiction over the Board's decision on the motion to reopen because the petitioner didn't file a petition for review from that decision. And we cited the Supreme Court case of Stone v. INS in our brief for that proposition. So the only issue before the Court is the Board's original decision. With respect to ---- What about the hardship and constitutional issues being involved, which might make those ---- make that appealable, the hardship determination? Well, the hardship determination is in the context of cancellation of removal, which is essentially a discretionary form of relief. And when we're talking about constitutional violations, you have to show a liberty interest. And there's no liberty interest in discretionary relief such as cancellation of removal. Is there a liberty interest in a fair hearing? I'm not aware that there is. I mean, there is an interest in a fair hearing. But when we're talking about due process violations, we're talking about a denial of a liberty or a property interest. And what's being denied here is she did have a fair hearing. The ultimate relief that she's looking for is cancellation of removal. Cancellation of removal is a discretionary form of relief. A denial of a discretionary form of relief does not give rise to a deprivation of a liberty interest, thereby giving rise to a constitutional violation. With respect to the ---- What about these kids? I mean, what's going to happen to them? I think that in the record, either the petitioner is deported, she can take the children with her, or I believe that there is a relative in the United States. In the context of cancellation of removal, it requires the judge to consider a hardship to United States citizens, because when Congress allowed that relief, they envisioned, they specifically accounted for the fact that there might be U.S. Well, it's certainly going to impact these kids. Absolutely. Right? Yes. So, why isn't that? You know, they're living here. They're just living, you know, just at the, maybe below the poverty level that we've set. They go down to Mexico. You know, the mother's going to be lucky if she can make a dollar or two dollars a day. What you're asking, Your Honor, what you're How are we going to take care of these American citizen-born children? Well, we don't know that she can only make one or two dollars a day, and what the court is doing Oh, well, she's barely making it here, and a lot of people in Mexico are working for a dollar or two a day. But what we're doing Five dollars a week, maybe. So what's going to happen to these kids? I mean, we're really They'll find a way to survive. We're really banishing them from the country. Well, not necessarily. They don't have to leave. No, they have to leave. What are they going to do here? They have relatives they can stay with. What if the relatives don't have the means to take care of them? Well, what we're doing, this conversation we're having is we're weighing the equities of hardship, and the court can't do that. It's for the I.J. to do. Well, but aren't there certain constitutional issues here? Well, I'll get to the People can't get out of the country. Well, the constitutional issue is ineffective assistance of counsel. Well, beyond that. Now, the only issue before the court is the constitutional issue of ineffective assistance of counsel. And so I'm about to argue that the Petitioner hasn't shown any prejudice with respect to her attorney at her hearing, because the whole thing that she claims was withheld from the immigration judge was the issue of the headaches. And the Petitioner's attorney asked, how are the health of the children? And as Judge Reed observed, maybe it was Judge Canby, I'm not sure, she said that it's fine. I mean, what more can you get? What greater Is there some legislation in the offing that we know about? I mean, you're in the Justice Department, so I figure you must know everything. And to correct a situation like this, isn't President Bush thinking about helping these people? Yeah, I think there's something of the guesswork. How old are these boys? I mean, they're 16 with about, what, 12 or 13? I think the daughter is 16 now, and the boys are 8 and 10, something like that. I understand, Your Honor, this is a sympathetic issue with respect to pending legislation. I bring this up. We have the next war. Who's going to fight it for us? Everybody from Yale going to come in and volunteer, or Harvard? I mean, who's fighting our wars? People who volunteer. Think about that, too. I understand. We're short-sighted. We're kind of stupid about the whole thing. Well, that's for Congress to change, Your Honor. I understand, and I don't mean to be hard-hearted about this, but the Congress has considered this and has put in place a system of hearings for the petitioner and immigration judges to hear these issues, and Congress has specifically decided that the district has to show exception to these. Well, the BIA doesn't even hear these things anymore. Well, in that case, we're reviewing the decision. They just short-circuit them. Well, we review the decision of the immigration judge, which is what we're doing. How many of those are reversed? How many? Reversed. Which the immigration judge? It's an adverse decision by an immigration judge. I don't have any statistics available for you, Your Honor. I'm sorry. So, but like I said, the issue before the court is the petitioner is presented as ineffective assistance of counsel. She has to show prejudice. She hasn't shown that. She hasn't shown that her attorney's representation was deficient in any way because she was specifically asked about the Well, if the testimony had come out that the daughter was suffering from these headaches and so on, wouldn't that have made a difference? I don't think it would have. There's no evidence that the daughter couldn't get medical treatment in Mexico for headaches. It talks about the statute refers to exceptional and extremely unusual hardship, and Congress specifically made that more stringent in IRERA after the previous standard, which was just extreme hardship. So Congress decided that it's got to be really, really unusual, exceptional and extremely unusual. And then decided we had no jurisdiction to review it. Correct. That's what Congress said. That's what it said. We've got a separation of powers issue, haven't we? I don't follow, Your Honor. Separation. So what do you think the judiciary is here for? Just to rubber stamp everything? Oh, well, I think that, yes, the separation of powers issue to the extent that Congress decided that it wants the executive branch to make decisions about who can stay in the country, because that's the province of the executive branch of government. Well, I mean, so long as the Constitution isn't violated. Correct. And our position is that the Constitution in this case wasn't violated. Subject to the Court's questions, we conclude our presentation. Thank you. All right. On the issue of prejudice, had the medical evidence been presented, it would have made a difference to the immigration judge. The Board of Immigration Appeals has found in In Re Mon Real that you don't have to the hardship to the qualifying relatives does not have to be unconscionable. And the times the cancellation is granted is often because a qualifying relative has a medical problem. The fact that she had severe headaches and probably could not afford treatment in Mexico with her mother, all of these factors have to be considered in the aggregate in a cancellation case. Therefore, she was prejudiced because of it. Do you have a diagnosis by a doctor? Mm-hmm. Do you get a medical report from a doctor? I mean, what does she have, migraine headaches, or do we know? She had severe headaches that caused her to vomit, and that is something that has run in the family, that her sister, I guess, had passed away from that. I mean, whether there's a medical – that's not in the record right now, a doctor's medical – is that what you're asking me? If that's in the record or the proof that she has these? Yeah. I mean, you say she has a severe headache. Well, the problem is that she needed to present that at court. And to present the fact that she suffered the severe medical – the severe medical problem shows the existence of the problem or the mentioning of it means that the court could – it could be reopened on those grounds because it should have been mentioned at the immigration court. And then if it's reopened, then it can be proved in court. But you didn't appeal that ruling. I'm sorry? You didn't appeal that ruling. Correct. But my point is that the medical records themselves don't have to be in the motion to reopen because that would be proved at court if the case is reopened. It's whether or not it presents an issue. I just asked you what it was. Right.  Anyway, so what I'm saying is that she would suffer prejudice. And you asked what would happen to kids if they go back. I mean, the reason why there's the – that prejudice is important is because if she did go back, the fact that she has a medical condition combined with the poverty that they would face, given the mother's lack of skills and lack of education, would make this an exceptional case. And therefore, I believe that she would – she was prejudiced because the immigration judge, if he was presented with this evidence, could have granted the case. Thank you. Thank you. The matter will be submitted. And some of the numbers. Next matter.
judges: Pregerson, Canby Reed